IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODERICK T. ALLEN, #N94327, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15-cv-00587-MJR ) |
| COLEMAN P. DUNBAR and MARK HANKS, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

This matter comes before the Court on Plaintiff Roderick Allen's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 6). Plaintiff, who is currently incarcerated at the Menard Correctional Center ("Menard"), seeks leave to proceed in this case without prepayment of the Court's usual $350.00[1] filing fee in a civil action. *See* 28 U.S.C. § 1914(a). He has accumulated well over three "strikes" by filing lawsuits in this District that were dismissed for failure to state a claim upon which relief may be granted or for raising frivolous claims.[2] Under the circumstances, he may not proceed IFP in a new civil action, unless he faces imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Plaintiff has not satisfied this standard. For the reasons set forth below, his IFP motion shall be **DENIED**.

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee shall be assessed in all civil actions, *unless* pauper status has been granted.

[2] *Allen v. Chapman, et al.*, Case No. 11-cv-1130-MJR (S.D. Ill., dismissed Aug. 29, 2012); *Allen v. Godinez, et al.*, Case No. 12-cv-936-GPM (S.D. Ill., dismissed Oct. 18, 2012); *Allen v. Harrington*, Case No. 13-cv-725-GPM (S.D. Ill., dismissed Aug. 22, 2013); and *Allen v. Bower, et al.*, Case No. 13-cv-931-MJR (S.D. Ill., dismissed March 17, 2014); *Allen v. Chapman*, Case No. 14-cv-348-JPG (S.D. Ill., dismissed Jun. 24, 2014).

Plaintiff has also filed a motion for temporary restraining order ("TRO") (Docs. 12-13). This is the third TRO motion he has filed in less than thirty-five days in this action, each time seeking a one-man cell or a prison transfer. The third TRO motion shall also be **DENIED**.

## Background

Plaintiff commenced this action on May 28, 2015, by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and a motion for temporary restraining order ("TRO") and/or preliminary injunction (Doc. 2). In both, he named two unidentified prison officials ("Jane and John Doe") at Menard Correctional Center ("Menard"), in connection with a claim that Menard officials retaliated against him for filing a lawsuit in February 2015. This retaliation allegedly took four different forms: (1) prison officials revoked Plaintiff's one-man cell status and assigned him a series of aggressive cellmates[3] (Doc. 1, p. 7); (2) prison officials poisoned his navy beans on March 1, 2015 (Doc. 1, p. 4); (3) prison officials refused to acknowledge any connection between his weight loss and health (Doc. 1, p. 5); and (4) a prison official handcuffed him so tightly that a blood vessel burst in his wrist on May 20, 2015 (Doc. 1, p. 9). Plaintiff requested reinstatement of his one-man cell status at Menard or a prison transfer to a facility that would provide him with one.

The case was opened without prepayment of the $400.00 filing fee or receipt of a motion for leave to proceed *in forma pauperis* ("IFP"). Out of an abundance of caution, the Court immediately considered the merits of the complaint and the request for TRO. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012). Plaintiff's complaint and motion

---

[3] According to the complaint, Plaintiff's assignment to a one-man cell resulted from his regular refusal to submit to a tuberculosis skin test ("TB skin test") (Doc. 1, pp. 4, 8). On February 17, 2015, he learned that his one-man cell status was revoked. Plaintiff has since been assigned a series of aggressive cellmates, who, upon learning that Plaintiff refused the TB skin test, have expressed concern to prison staff about their continued placement in a cell with him (Doc. 1, pp. 6-7). When prison officials ignore these concerns, the cellmates have allegedly become aggressive toward Plaintiff.

suffered from the same infirmity; both failed to mention "Jane Doe" or "John Doe" anywhere in the body of the pleading. Given this omission, it was impossible to assess what claims, if any, Plaintiff stated against them. The Court dismissed the complaint and denied the request for TRO without prejudice on June 3, 2015 (Doc. 5). Plaintiff was granted leave to file an amended complaint on or before June 28, 2015. He was ordered to tender payment of the $400.00 filing fee or file an IFP motion by the same deadline. Plaintiff's request for a preliminary injunction was held in abeyance, pending receipt of a properly amended pleading.

Before filing an amended complaint, Plaintiff filed a second TRO motion (Doc. 7) on June 10, 2015. Once again, Plaintiff named only "Doe" defendants in the case caption, but failed to mention them anywhere in the motion. And, absent an amended complaint, the Court could not look elsewhere when determining whether grounds exist for granting a TRO or for referring the case for further review. The Court denied the second TRO motion without prejudice and advised Plaintiff that the June 28, 2015, deadline for filing his amended complaint and filing his IFP motion remained in effect (Doc. 8).

Plaintiff requested an extension of this deadline until August 4, 2015 (Doc. 9). In support of the request, Plaintiff alleged that he lacked paper and a pen for use in preparing the amended complaint (Doc. 9). However, Plaintiff submitted the request using a pen and paper, and the Court provided him with a blank civil rights complaint form for use in preparing the pleading. Therefore, the Court denied Plaintiff's request for an extension for lack of good cause being shown (Doc. 10).

Plaintiff filed his amended complaint on June 30, 2015 (Doc. 11).[4] *See Taylor v. Brown*, --- F.3d ---, 2014 WL 9865341, at *6 (7th Cir. Jun. 2, 2015). There, Plaintiff sets forth a litany

---

[4] The Court accepts the amended complaint as timely filed. Under the prison mailbox rule, a *pro se* prisoner's legal documents are considered filed on the date that they are tendered to prison staff in

of complaints about Plaintiff's current confinement at Menard. Most of the complaints arise from the revocation of his one-man cell status on February 17, 2015, and his subsequent placement with numerous aggressive cellmates (Doc. 11, p. 6). Plaintiff names only two defendants, i.e., C/O Hanks and C/O Dunbar. Few of the allegations pertain to them. To the extent they do, the Court will discuss the allegations against each defendant below.

## IFP Motion

Pursuant to 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). In civil actions, a prisoner's affidavit of indigence must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Plaintiff submitted an affidavit of indigence that is sufficient as to form (Doc. 6).

Nevertheless, Plaintiff is barred from proceeding IFP. *See* 28 U.S.C. § 1915(g). According to Section 1915(g), a prisoner may not "bring a civil action" or appeal a civil judgment *in forma pauperis* "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief

---

accordance with reasonable prison policies, regardless of whether they are ultimately mailed or scanned. *Taylor v. Brown*, --- F.3d ---, 2014 WL 9865341, at *6 (7th Cir. Jun. 2, 2015). Plaintiff's certificate of service indicates that he placed the amended complaint in the institutional mail on June 28, 2015, i.e., the court-imposed deadline (Doc. 11, p. 16). It is therefore considered timely, despite the fact that the amended complaint was actually scanned and received by the Court two days after the deadline.

may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Plaintiff's IFP motion must be denied on these grounds.

When asked whether he had "begun any other lawsuits in state or federal court relating to [his] imprisonment," Plaintiff disclosed eleven lawsuits that he filed in this District (Doc. 1, p. 2; Doc. 11, p. 2). In fact, Plaintiff has filed eighteen lawsuits and/or appeals since 2011. *See Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n. 2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). He should have disclosed them all, specifying those that resulted in "strikes." According to the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov), five of the twelve lawsuits that Plaintiff filed in this District resulted in the assessment of a "strike" because the suits were dismissed as frivolous, malicious, or for failure to state a claim. *See Allen v. Chapman, et al.*, Case No. 11-cv-1130-MJR (S.D. Ill., dismissed Aug. 29, 2012); *Allen v. Godinez, et al.*, Case No. 12-cv-936-GPM (S.D. Ill., dismissed Oct. 18, 2012); *Allen v. Harrington*, Case No. 13-cv-725-GPM (S.D. Ill., dismissed Aug. 22, 2013); *Allen v. Bower, et al.*, Case No. 13-cv-931-MJR (S.D. Ill., dismissed Mar. 17, 2014); and *Allen v. Chapman*, Case No. 14-cv-348-JPG (S.D. Ill., dismissed Jun. 24, 2014).[5] The Court is justified in denying the IFP motion, based solely on Plaintiff's failure to disclose this information. *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999).

---

[5] Of the six appeals that Plaintiff filed in the Seventh Circuit Court of Appeals, none resulted in "strikes." Three are currently pending, and three were dismissed for failure to pay the filing fee. In two that involve claims against prison officials who allegedly attempted to kill Plaintiff by administering a contaminated tuberculosis skin test, the Seventh Circuit revoked Plaintiff's IFP status after finding that "no reasonable person would suppose that Allen's appeal has merit." *See Allen v. Chapman, et al.*, Appeal No. 12-3162 (7th Cir. 2012) (Doc. 17); *Allen v. Grooves*, et al., Appeal No. 12-2543 (7th Cir. 2012) (Doc. 5).

But there are other reasons for doing so.  Because Plaintiff has incurred more than three "strikes" for purposes of Section 1915(g), he may not "bring a civil action" unless his is under imminent danger of serious physical injury.  Plaintiff has failed to satisfy this requirement.

The allegations support no finding that Plaintiff faced imminent danger of serious physical injury at the time he *brought* this action.  *See* 28 U.S.C. § 1915(g).  An action is commenced by filing a complaint.  *See* FED. R. CIV. P. 3.  Plaintiff filed the complaint on May 28, 2015 (Doc. 1).  Therefore, the question is whether the allegations are sufficient to find that Plaintiff faced "imminent danger of serious physical injury" on May 28, 2015.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of Section 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner.  *Ciarpaglini*, 352 F.3d at 330 (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)).  In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous."  *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)).  Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring ***at the time the complaint is filed***," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP."  *Id*. at 330 (emphasis added) (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

The pleadings do not suggest that Plaintiff faced imminent danger of serious physical injury at the time he *brought* this action on May 28, 2015.  The IFP motion (Doc. 6) does not mention imminent danger at all.  The original complaint asserts claims of retaliation stemming from Menard officials' revocation of Plaintiff's one-man cell status, their poisoning of his navy

beans, their failure to acknowledge his weight loss, and the wrist injury he sustained from tight handcuffs.

The amended complaint abandons all but one of these claims against Defendants Hanks and Dunbar.  Plaintiff's allegations focus entirely on his continued placement in a two-man cell.  Even with regard to this claim, the amended complaint describes only one incident occurring on or before May 28, 2015.  According to the amended pleading, Defendant Hanks and several other officers ignored Plaintiff's refusal to live in a two-man cell on March 21, 2014, and he was allegedly assaulted by his cellmate three days later (Doc. 11, p. 7).  However, the pleading does not suggest that the incident placed Plaintiff in imminent danger of serious physical injury fourteen months later on or around May 28, 2015.

All other allegations against Defendants Hanks and Dunbar pertain to events that transpired *after* Plaintiff filed his complaint and first TRO.  For example, the pleading alleges that Plaintiff skinned his elbow when Defendant Hanks carried him into his cell on June 15, 2015 (Doc. 11, p. 11; Doc. 11-2, p. 5).  When Plaintiff again refused to enter his cell later the same month, Defendant Hanks told Plaintiff that he wanted to beat him, but took no action.  On May 29, 2015, Defendant Dunbar placed Inmate Jackson into a cell with Plaintiff.  According to the amended complaint, Inmate Jackson is gay, and Plaintiff did not want to share a cell with him for this reason.  When Plaintiff complained, Defendant Dunbar and another officer called him a "b*tch" (Doc. 11, p. 11; Doc. 11-1, p. 3).  When Plaintiff sat down and refused to enter his cell on June 11, 2015, Defendant Dunbar "lifted Plaintiff off of the floor slightly and tossed Plaintiff into the cell" (Doc. 11, p. 12; Doc. 11-2, p. 3).  He landed on both knees and experienced "extreme" pain.  On June 13, 2015, Defendant Dunbar was allegedly within earshot when Inmate Jackson told Plaintiff to "[h]urry up and get the f*ck out of the way" (Doc. 11-1,

p. 2). Defendant Dunbar provided Plaintiff with antibiotic ointment and Band-Aids, along with a note stating "[k]eep area clean and dry," in response to his complaint about his left elbow injury on June 17, 2015. Plaintiff told Defendant Dunbar (three days after the fact) that he was forced to urinate on the floor of his cell when Inmate Jackson refused to let him access the toilet for ninety minutes on June 17, 2015 (Doc. 11-2, p. 8). Finally, Defendant Dunbar was allegedly nearby and should have heard Inmate Jackson screaming at Plaintiff for twenty minutes on June 26, 2015, the same day that Inmate Jackson pounded Plaintiff's bed and hit his foot in the process when he became angry at gallery officers for ignoring him (Doc. 11-2, p. 14). Because all of these events occurred *after* Plaintiff brought the action, they do not support Plaintiff's request for IFP status under Section 1915(g).

But even if the events described in the preceding paragraph occurred prior to the date that Plaintiff commenced this action, they do not demonstrate that Plaintiff faces imminent danger of serious physical injury. The fact that Plaintiff has been called names supports no claim of imminent danger, let alone any claim at all. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2002) (holding that the use of derogatory language, though unprofessional and deplorable, does not raise a constitutional claim). In terms of a physical injury, Plaintiff complains of a skinned elbow and pain in his knees--two injuries that occurred as a direct result of his refusal to enter his cell. Plaintiff does not allege that either injury is serious or that either encounter with the defendants poses a threat of serious future injury. He also mentions an incident in which Inmate Jackson pounded Plaintiff's mattress after becoming angry at several gallery officers and hit Plaintiff's foot in the process; however, Plaintiff mentions no actual injury that resulted or any threat of future injury that arose from this incident.

Further, Plaintiff's general claims about the risks posed by Inmate Jackson are vague and conclusory. Plaintiff omits critical information, such as specific threats directed toward Plaintiff, what exactly was said, when the threats were made, whether Plaintiff notified Defendants about the threats, and their response. Absent more specific information, the Court is compelled to deny leave to proceed IFP because Plaintiff's "claims of imminent danger are conclusory or ridiculous." *Ciarpaglini*, 352 F.3d at 331 (citing *Heimermann*, 337 F.3d at 782).

Having made no showing that he faced imminent danger at the time he brought this action, Plaintiff cannot proceed *in forma pauperis*. Accordingly, the IFP motion must be denied (Doc. 6). Plaintiff is obligated to pay the full filing fee of $400.00 for this action. If he would like the Court to proceed with a preliminary review of his amended complaint under 28 U.S.C. § 1915A, Plaintiff must prepay the full amount of this filing fee within thirty (30) days of this Order (on or before August 7, 2015).

## Third TRO Motion (Doc. 12)

Plaintiff filed his third request for a temporary restraining order ("TRO") (Doc. 12) on July 1, 2015. He supplemented the motion on July 2, 2015 (Doc. 13). In the motion, Plaintiff challenges his current placement with Inmate Jackson. The two were placed together on May 29, 2015. Plaintiff disputed the placement decision as soon as he saw Inmate Jackson. Plaintiff explains that Inmate Jackson is obviously gay, and Plaintiff does not wish to be placed in a cell with him. He characterizes this inmate as highly aggressive.

The motion offers few examples of Inmate Jackson's aggression. Inmate Jackson allegedly refuses to say "excuse me." He once approached Plaintiff with his genitals exposed as he walked toward the toilet in an effort to use the bathroom, causing Plaintiff to feel trapped. He also attempted to instigate a fight by removing Plaintiff's empty food tray from the top bunk

and making undisclosed threats toward Plaintiff on June 26, 2015. He has also screamed at Plaintiff and pounded his fists on Plaintiff's top bunk, after becoming angry when the gallery officers ignored him. Plaintiff perceives this conduct to be physical and sexually threatening, and he requests placement in a one-man cell.

As the Court has previously explained, a TRO may issue without notice to the party to be enjoined if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). This form of relief may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). It is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

For Plaintiff to obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, he must show the district court that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Merritte v. Kessel*, 561 Fed. Appx. 546, 548 (7th Cir. 2014) (citing *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir.2007)). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *Id.* (citing *Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir.2013); *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir.1999)). Plaintiff's third TRO motion (Doc. 12) and supplement (Doc. 13) satisfy none of these requirements.

The allegations do not demonstrate that Plaintiff faces a substantial risk of irreparable harm—at least not in connection with the conduct of Defendant Hanks or Dunbar. Plaintiff's claim that his current cellmate is highly aggressive is very concerning to the Court, but appears to be based on conclusory and unsupported allegations. For example, Plaintiff alleges that

Inmate Jackson has threatened to sexually assault him and/or kill him, but Plaintiff offers no concrete examples of instances in which either type of threat occurred, such as the date the threat was made, what was actually said, the circumstances surrounding the threat, whether Plaintiff reported the threat to either defendant, or their reactions.

The fact that Inmate Jackson refuses to say "excuse me" or calls Plaintiff names is not the type of conduct that supports the issuance of a TRO, let alone a constitutional claim. *See DeWalt*, 224 F.3d at 612. The fact that Inmate Jackson exposed his genitals as he walked toward Plaintiff is more concerning, except that he was admittedly headed for the toilet in an effort to use the bathroom. Plaintiff's allegation that Inmate Jackson has exposed his anus and genitals on other occasions is also concerning, but not surprising given that the two inmates share close living quarters and lack privacy; Plaintiff fails to provide basic details in support of this claim (e.g., the dates, times, frequency, context, etc.). Likewise, Inmate Jackson's removal of Plaintiff's empty food tray from his bunk might be concerning, except that Plaintiff offered no details in support of this allegation that this conduct was threatening. Simply put, Plaintiff has failed to allege what exactly Inmate Jackson said or did that was threatening, why it was threatening, whether he communicated the threatening conduct to a defendant, and how that defendant responded.

The Court cannot ignore the fact that Plaintiff twice admitted that he would harm Inmate Jackson. Plaintiff admitted telling Defendant Hanks that he would "seriously hurt [Inmate Jackson] if he attempted" to take his food, as his cellmate threatened to do in late June 2015 (Doc. 11-2, p. 9). Plaintiff also indicated that he would be "compelled to use force" against Inmate Jackson, if Internal Affairs did not immediately interview him (Doc. 11-1, p. 2).

Certainly, Plaintiff's own attempts to provoke Inmate Jackson do not warrant the issuance of a TRO.

Plaintiff has failed to demonstrate that alternative remedies are unavailable. In his complaint and amended complaint, Plaintiff identified no less than three instances in which his complaints to prison officials resulted in his placement with a different cellmate, with little delay. Further, upon request, Internal Affairs conducted an investigation into his placement with Inmate Jackson on June 10, 2015, and concluded that Plaintiff was appropriately placed in the cell with this inmate on June 18, 2015 (Doc. 11, p. 19). By all indications, other remedies are available.

Without more, the Court cannot find that a TRO is necessary to prevent a risk of serious injury from ripening into actual harm or that other remedies are not available. *Farmer*, 511 U.S. at 845. Accordingly, Plaintiff's third request for a TRO shall be denied without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated above, Plaintiff's third motion for temporary restraining order (Doc. 12) is **DENIED** without prejudice.

**IT IS ALSO ORDERED** that, for the reasons stated above, Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall pay the full filing fee of $400.00 for this action within thirty (30) days of the date of entry of this Order (on or before August 7, 2015). If Plaintiff fails to comply with this Order in the time allotted by the Court, this case will be dismissed. See FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir. 1994). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee for this

case remains due and payable—and will be collected one way or another. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 7, 2015**

s/ MICHAEL J. REAGAN
Chief Judge,
United States District Court